# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. RODRIGUEZ,<br>CDCR #BB-8937,<br><br>                              Plaintiff,<br><br>vs.<br><br>R. MADDEN, Warden;<br>VALENCIA, Correctional Officer,<br>                              Defendants. | Case No.: 3:22-cv-01437-DMS-KSC<br><br>**ORDER:**<br><br>**(1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**(2)  DISMISSING DEFENDANT MADDEN AS A PARTY PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND 28 U.S.C. § 1915A(b)(1)**<br><br>**AND**<br><br>**(3)  DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANT VALENCIA PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

On August 5, 2022, Plaintiff John C. Rodriguez, who is currently incarcerated at California State Prison-Los Angeles County ("LAC") and proceeding pro se, filed this rights action pursuant to 42 U.S.C. § 1983 in the Central District of California, together

with a Motion to Proceed In Forma Pauperis ("IFP"). *See* ECF Nos. 1 & 2. Because Rodriguez claims correctional officials at Richard J. Donovan Correctional Facility ("RJD") in San Diego violated his Eighth Amendment rights in December 2020 while he was housed there, the Honorable Fred W. Slaughter found venue was proper in the Southern District, but not the Central District of California pursuant to 28 U.S.C. § 1391(b), and transferred the case here in the interests of justice pursuant to 28 U.S.C. § 1406(a). *See* ECF No. 6. Judge Slaughter expressly declined to rule on Rodriguez's pending Motion to Proceed IFP, and made no determination as to whether his Complaint survives the *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). *Id.* at 3.

## I.   MOTION TO PROCEED IN FORMA PAUPERIS

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, the Prison Litigation Reform Act's ("PLRA") amendments to § 1915 require that all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2021)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Rodriguez complied with 28 U.S.C. § 1915(a)(2) by submitting a copy of his CDCR Inmate Trust Account Statement Report.  *See* ECF No. 2 at 4–5; *see also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119.  This Report shows Rodriguez maintained an average monthly balance of $51.83, and had $120.60 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint.  Rodriguez's available balance at the time his Report was generated was $52.39.  *See* ECF No. 2 at 4.

Based on this accounting, the Court GRANTS Rodriguez's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $24.12 pursuant to 28 U.S.C. § 1915(b)(1).  However, this initial fee need be collected only if sufficient funds are available in Rodriguez's account at LAC the time this Order is executed.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered.").  Whatever balance remains of

the $350 total fee owed in this case must be collected by the agency having custody of Rodriguez and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II.     SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

### A.     Standard of Review

Because Rodriguez is a prisoner proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" or unadorned, "the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79.

B.  Plaintiff's Allegations

On or about December 14, 2020, while Rodriguez was housed in the "Upper G section" of RJD's Ad-Seg Unit in Building #7, Defendant Correctional Officer Valencia was assigned to escort him to the yard. *See* Compl. at 4. At his cell door, Rodriguez reported to Valencia that he was "very dizzy all morning." *Id*. Valencia asked: "Are you going to go to yard or not?" Rodriguez agreed and "cuffed up." *Id*. When the two reached the stairs, Rodriguez asked Valencia to help him down the stairs. However, Valencia "did not even have a hand on as per CDCR rules of escorting Ad-Seg inmates." *Id*. When Rodriguez took his first step, he fell down the staircase while in handcuffs. *Id*. Rodriguez contends his fall was recorded on video, and he suffered a "life-threatening injury" as a result. *Id*.

Attached to Rodriguez's Complaint are a CDCR 602 Health Care Grievance, Log No. HDSP-HC-21000-781, which he appears to have filed after he was transferred to High Desert State Prison, *id*. at 9–14, and portions of a UC San Diego Health trauma evaluation and radiology records. *Id*. at 15–22. These exhibits indicate Rodriguez underwent "same day cervical spine and head CT examinations" after his December 14, 2020 fall which revealed an "extensive right front scalp hematoma control laceration extending into the pre and periorbital soft tissues," an "associated fracture of the superior right orbital rim," an "additional hairline fracture deformity of the right anteroinferior frontal bone transgressing the anterior and posterior cortex of the frontal sinus," and "minimally displaced bilateral anterior nasal bone fractures," but "no fracture or dislocation [of his] thoracic or lumbar spine." *Id*. at 16, 19, 21.

Rodriguez claims Valencia's actions amounted to cruel and unusual punishment as prohibited by the Eighth Amendment. *Id*. at 4. He seeks nearly $2 million in general and punitive damages, and an injunction preventing "any from of retaliation." *Id*. at 8.[2]

---

[2] Because Rodriguez is longer incarcerated at RJD, his claims for injunctive relief is moot. *See Andrews,* 493 F.3d at 1053 n.5 (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.

C. 42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under section 1983, Rodriguez must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

Rodriguez alleges R. Madden was the Warden of RJD, and Correctional Officer Valencia was employed there and responsible for ensuring his safety during the December 14, 2020 escort. *See* Compl. at 1–2, 4. "State employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 48 (internal quotations and alterations omitted); *see also Anderson*, 451 F.3d at 1068 ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.") (citing *West*, 487 U.S. at 49–50). Therefore, the Court need only consider whether Rodriguez has also alleged facts sufficient to show either Warden Madden or Correctional Officer Valencia violated his Eighth Amendment rights.

*1. Rodriguez Fails to Allege Warden Madden's Individual Liability*

The Court first finds Rodriguez's Complaint fails to state any plausible claim for relief against Warden R. Madden. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993) (noting there is no respondeat superior liability under 42 U.S.C. § 1983). Supervisory officials like Warden Madden may only be

---

1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]").

held liable under § 1983 if Rodriguez alleges his "personal involvement in the constitutional deprivation, or ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011). In other words, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (citations omitted).

Rodriguez lists "R. Madden (Warden)" as a party to his case by including him in the title of his Complaint. *See* Compl. at 1; Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). While Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (citations omitted). While Rodriguez's Complaint identifies Madden as RJD's Warden, it includes no facts linking the Warden to his claim for relief. Nor does it describe what role Warden Madden played with respect to the injuries Rodriguez sustained as a result of his fall on December 14, 2020. In fact, nothing in Rodriguez's Complaint plausibly suggests Madden "through his own individual actions, ... violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Commty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). Therefore, to the extent Rodriguez includes Madden as a party in the title of his Complaint, but alleges no plausible claim for relief against him, Rodriguez's Complaint is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Watison* 668 F.3d at 1112; *Wilhelm,* 680 F.3d at 1121.

/ / /

/ / /

       2.      *Rodriguez Sufficiently Alleges Officer Valencia Failed to Protect Him*

Rodriguez's allegations against Correctional Officer Valencia, on the other hand, liberally construed, are "sufficient to warrant ... an answer." *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (noting that pro se pleadings require liberal construction post–*Iqbal*).

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. AMEND. VIII. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Balla v. Idaho*, 29 F.4th 1019, 1025 (9th Cir. 2022) (citations omitted). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of 'the minimal civilized measure of life's necessities.'" *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This requires the inmate to allege facts sufficient to show he was exposed to "conditions posing a substantial risk of serious harm" or presenting an "excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 834, 837.

"The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Allen*, 48 F.3d at 1087; *see also Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 927–28 (9th Cir. 2021). "[D]eliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer*, 511 U.S. at 836. To plausibly show a prison official was deliberately indifferent, a plaintiff must allege the officer knew "of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. [But] [n]ot every deviation from ideally safe conditions amounts to a constitutional violation." *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996) (citation omitted). Thus, the mere risk that a prisoner might slip and fall does not constitute

a substantial risk of serious harm under the Eighth Amendment. *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[S]lippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[S]hackling a dangerous inmate in a shower" by itself "does not create[] a sufficiently unsafe condition."); *see also Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) ("Simply put, [a] slip and fall, without more, does not amount to cruel and unusual punishment.") (internal quotation marks and citation omitted).

However, Rodriguez does not stake his Eighth Amendment claim on the condition of the stairs. Instead, he contends Valencia failed to protect him from a substantial risk by cuffing him before escort and then ignoring his request for assistance when he reached the staircase. *See* Compl,. at 4. Rodriguez specifically alleges Valencia was aware he was "very dizzy all morning," and yet "did not even have a hand on [him]" as Rodriguez attempted to descend. *Id.*[3] Where a prisoner alleges exacerbating circumstances, including a prison official's awareness of a specific or obvious risk, and further claims he was injured as a result of that official's failure to employ reasonable protective measures to abate that risk, courts have found viable Eighth Amendment violations. *See Farmer*, 511 U.S. at 847; *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (allowing Eighth Amendment claim to proceed where inmate on crutches fell and injured himself several times, despite prison guards' awareness of prior falls); *Covert v. Graham*, 2009 WL 2882871, at *3 (N.D. Cal. Sept. 1, 2009) (finding prisoner's claims of having been provided ill-fitting shoes and

---

[3] To the extent Rodriguez seeks to hold Valencia for liable for failing to comply with "CDCR rules of escorting Ad-Seg inmates," *see* Compl. at 4, violations of state prison rules and regulations, without more, do not support any claims under § 1983. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Only if the events complained of rise to the level of a constitutional violation may Rodriguez pursue them under § 1983. *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

forced to descend "wet, slimy, and dirty stairs" without assistance while handcuffed sufficient to "present a cognizable claim of deliberate indifference to his safety."); *Curry v. Tilton*, 2007 WL 2778363, at *4 (N.D. Cal. Sept. 21, 2007) (finding Eighth Amendment failure to protect claims sufficient where prison escort officer refused request for modified handcuffs for inmate's paralyzed arm and then failed to secure him as he descended stairs).

In short, because "awareness of a prisoner's disability or proclivity toward falling may turn a slippery prison floor," or as alleged here, a cuffed prison escort down a staircase, "into a potential constitutional claim," *Jones v. Meddly*, 2019 WL 3302358, at *7 (E.D. Cal. July 23, 2019), the Court finds Rodriguez's Eighth Amendment claims against Officer Valencia are sufficient to survive the "low threshold" set for initial preliminary screening as required by 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1).[4]  *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Iqbal,* 556 U.S. at 678.  Therefore, the Court will direct the U.S. Marshal to effect service upon Officer Valencia on Rodriguez's behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III.   CONCLUSION AND ORDER

For the reasons discussed, the Court:

1) **GRANTS** Rodriguez's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Rodriguez's trust account the $24.12 initial filing fee assessed, *if those funds are available*

---

[4] Rodriguez is cautioned, however, that "the *sua sponte* screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [Defendant Valencia] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

*at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

      3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

      4) **DISMISSES** Defendant R. Madden (Warden) as a party to this case based on Rodriguez's failure to state a plausible claim for relief against him pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

      5) **DIRECTS** the Clerk to issue a summons as to Rodriguez's Complaint (ECF No. 1) upon Defendant VALENCIA and forward it to Rodriguez along with a blank U.S. Marshal Form 285. In addition, the Clerk will provide Rodriguez with a copy of this Order, a certified copy his Complaint, and the summons so that he may serve Defendant VALENCIA. Upon receipt of this "IFP Package," Rodriguez must complete the U.S. Marshal Form 285 as completely and accurately as possible, include an address where Defendant VALENCIA may be served, *see* S.D. Cal. Civ. L.R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

      6) **ORDERS** the U.S. Marshal to serve a copy of Rodriguez's Complaint and summons upon Defendant VALENCIA at the address provided by Rodriguez on the USM Form 285 provided, and to file an executed waiver of personal service upon VALENCIA with the Clerk of Court as soon as possible after its return. Should Defendant VALENCIA fail to return the U.S. Marshal's request for waiver of personal service within 90 days, the U.S. Marshal must instead file the completed Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, Complaint and request for waiver

was mailed to VALENCIA, and indicate why service remains unexecuted. All costs of service will be advanced by the United States; however, if VALENCIA is located within the United States, and fails without good cause to sign and return the waiver requested by the Marshal on Rodriguez's behalf, the Court will impose upon VALENCIA any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7) **ORDERS** Defendant VALENCIA, once served, to reply to Complaint, and any subsequent pleading Rodriguez may file in this matter in which VALENCIA is named as a Defendant, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (stating that while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

8) **ORDERS** Rodriguez, after service has been effected by the U.S. Marshal, to serve upon VALENCIA, or if appearance has been entered by counsel, upon VALENCIA's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Rodriguez must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on VALENCIA or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendant VALENCIA, may be disregarded.

**IT IS SO ORDERED.**

Dated: 11/14/22

Hon. Dana M. Sabraw, Chief Judge
United States District Court